UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

EVELYN TAYLOR                                                    PLAINTIFF

V.                              NO. 3:19CV00219-JTR

ANDREW SAUL,
**Commissioner of Social Security Administration[1]**          DEFENDANT

## ORDER

### I.   Introduction:

Plaintiff, Evelyn Taylor ("Taylor"), applied for disability benefits on May 8, 2015, alleging disability beginning on October 15, 2013. (Tr. at 19). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application. (Tr. at 34). The Appeals Council denied her request for review. (Tr. at 1-6).

On September 25, 2017, Taylor filed a Complaint in this Court appealing the denial of benefits. (Tr. at 1565-1575). Based on an unopposed motion by the Commissioner, the Court remanded the case for further administrative review. (Tr. at 1576-1584). Pursuant to the remand, the Appeals Council ordered another hearing and administrative determination because the ALJ failed to resolve an inconsistency between the *Dictionary of Occupational Titles* ("DOT") and the testimony of the Vocational Expert ("VE"). (Tr. at 1587-1592). The ALJ had assigned an RFC for

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

simple work but the VE provided jobs requiring level 3 reasoning, which presents a conflict. *Id.*

After a second hearing, the ALJ again denied Taylor's disability claim. (Tr. at 1478-1500). Taylor did not seek review by the Appeals Council and, therefore, the ALJ's decision now stands as the final decision of the Commissioner.

For the reasons stated below, the Court [2] affirms the decision of the Commissioner.

## II.   <u>The Commissioner's Decision:</u>

The ALJ found that Taylor had not engaged in substantial gainful activity since the alleged onset date of October 15, 2013. (Tr. at 1481). At Step Two, the ALJ found that Taylor had the following severe impairments: nonalcoholic cirrhosis of the liver, spine disorders, fibromyalgia/joint dysfunction, asthma, sleep apnea, gastroesophageal reflex disorder ("GERD"), obesity, borderline intellectual functioning ("BIF"), major depressive disorder, and generalized anxiety disorder. *Id.*

After finding that Taylor's impairments did not meet or equal a listed impairment (Tr. at 1482), the ALJ determined that Taylor had the residual functional capacity ("RFC") to perform work at the light level, except that: (1) she could only occasionally climb ramps and stairs; (2) she could only occasionally balance, stoop,

---

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

kneel, crouch, and crawl, but never climb ladders, ropes, or scaffolds.; (3) she must avoid hazards, such as unprotected heights and moving mechanical parts; (4) she must avoid exposure to pulmonary irritants, such as dust, odors, and fumes; (5) she is limited to unskilled work; (6) she is able to perform simple, routine, and repetitive tasks, she can make simple work-related decisions, and she can concentrate, persist, and maintain pace with normal breaks; and (7) interpersonal contact must be incidental with coworkers and the public, with supervision that is simple, direct, and concrete. (Tr. at 1485).

The ALJ found that Taylor had no past relevant work. (Tr. at 1499). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, based on Taylor's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including work as pattern folder and silver wrapper. (Tr. at 1500). Thus, the ALJ found that Taylor was not disabled. *Id*.

## III.   **Discussion**:

### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see*

*also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d. at 477.

B.   Taylor's Arguments on Appeal

Taylor contends that substantial evidence does not support the ALJ's decision to deny benefits. She argues that the ALJ did not properly weigh the medical opinions or the Global Assessment of Functioning ("GAF") scores, and the RFC did not incorporate all of her limitations. Taylor focused her argument on her mental impairments, so the Court likewise limits its discussion thereto.

Taylor was diagnosed with ADHD, Major Depressive Disorder, and

Borderline Intellectual Functioning. (Tr. at 512, 523, 813, 826). She also had intermittent anxiety. Her main psychiatric treatment was at Families, Inc. She treated there through most of 2012 (prior to the relevant time-period) 2015, 2016, and 2017. (Tr. at 496-498, 515, 519, 523, 814, 819-821, 845, 857, 866, 880, 886, 1455-1458, 1466, 1700, 1708, 1807, 1814, 1821, 1824, 1837, 1848, 1941, 1944). On 29 occasions throughout her treatment, she had generally normal mental status exams, with good judgment and insight, appropriate and attentive affect, and normal speech and thought processes. *Id*. At a few appointments, she appeared unkempt, depressed, and was difficult to redirect. (Tr. at 831, 839, 883). It is noteworthy that Taylor was non-compliant with treatment, stopping her medication or missing a therapy appointment. (Tr. at 883). When she stopped her medication, she experienced mood instability. (Tr. at 880-883). At therapy in 2016 and 2017, her mood seemed to correlate to whether or not she had a boyfriend and how well she got along with him. (Tr. at 1700, 1703, 1709). In October 2017, she expressed to her therapist her desire to have a boyfriend. (Tr. at 1815). Situational social stressors are generally not indicative of long-term, serious problems.

Taylor was able to watch TV and movies, spend time with others, shop, do laundry and play with her dogs, and deal appropriately with authority. (Tr. at 371, 506, 1484, 1520, 1703). Such daily activities undermine her claims of disability.

*Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995).

On June 26, 2014, Vickie Caspall, Ph.D., performed a mental consultative examination. (Tr. at 510-509). Dr. Caspall noted good eye contact, calm and cooperative demeanor, and goal directed speech, although Taylor talked in a childlike manner. *Id*. Dr. Caspall said that Taylor was not operating in the intellectual disability range. *Id*. She said that Taylor could perform activities of daily living autonomously. *Id*. Dr. Caspall found that Taylor had no difficulty with persistence and had no cognitive slowing. *Id*. Dr. Caspall opined that Taylor would be impaired in her ability to interact in a socially appropriate manner, but could perform work-like tasks and basic arithmetic. *Id.* This opinion is consistent with the assigned RFC, and the ALJ gave it some weight. (Tr. at 1496).

The ALJ also gave some weight to the opinion of Christopher Dow, a licensed psychologist. He examined Taylor on November 21, 2014, and noted adequate grooming and hygiene, with cooperative and pleasant mood. (Tr. at 510-512, 1487). He diagnosed borderline intellectual functioning and said that Taylor needed a social support system to adapt to a work setting. *Id*. The ALJ gave this opinion some weight. (Tr. at 1496).

The two disability determination screening doctors found, in 2015, that Taylor was capable of unskilled work, which was reflected in the RFC. (Tr. at137-148, 182-

194).

Rhonda Crabtree, M.S., L.P.E. examined Taylor on November 9, 2018. She administered an intellectual functioning test, and found Taylor scored a 79, which was in the upper borderline function range. (Tr. at 1774). She noted good effort by Taylor, with little need for redirection and prompt responses. *Id.*

Finally, Courtney Kincaid, APRN, issued a medical source opinion dated January 31, 2019, which set forth marked and moderate limitations in mental functioning. (Tr. at 1799-1801). The ALJ gave this opinion little weight because: 1) it was on a short checkbox form; and 2) it was contradictory to notes from several appointments with Kincaid which revealed normal psychiatric examinations. (Tr. at 1497, 1893-1944). The weight given to Kincaid's opinion was appropriate; the ALJ incorporated some of the limitations listed by Kincaid in the RFC. The ALJ did not err in the weight she assigned each medical opinion.

Taylor argues that the RFC outstripped her abilities. A claimant's RFC represents the most she can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). The RFC in this case was for unskilled work, with some limitation on personal interaction. (Tr. at 1485). It incorporated the results of intellectual testing, mostly normal mental status exams, Taylor's non-compliance,

and her ability to perform activities of daily living. The RFC aligned with the relevant medical evidence. Also, the jobs identified at Step Five were level one and two reasoning jobs (Tr. at 1528), so the VE testimony at the second hearing, that which was relied on by the ALJ, was consistent with the RFC and the DOT. The ALJ complied with the remand order.

Finally, Taylor asserts that her GAF scores, which were in the 40-50 range, indicated total disability. GAF scores do not directly correlate to the severity of mental disorders. *Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010).   In fact, the Commissioner has declined to endorse the GAF scale for use in Social Security programs. *See Halverson v. Astrue*, 600 F.3d 922, 930-31 (8th Cir. 2010). A GAF score is only an opinion about the level of functioning and must have supporting evidence in order to be given much weight. *Id.* Moreover, GAF scores like Taylor had, in the 40-50 range, do not require a finding of disability. *See Jones*, 619 F.3d at 973-974 (denying benefits to a claimant with a GAF score of 35 can be proper). The GAF scores in this case did not establish, on their own, that Taylor was disabled. Nor did the balance of the medical evidence.

## IV.   <u>Conclusion</u>:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly weighed the medical opinions, she sufficiently analyzed

GAF scores, and the RFC incorporated Taylor's limitations.

IT IS THEREFORE ORDERED that the final decision of the Commissioner

is AFFIRMED, and Taylor's Complaint is DISMISSED, with prejudice.

DATED this 10th day of June, 2020.

_____
UNITED STATES MAGISTRATE JUDGE